IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JAMES M. GARDNER**                                                                              **PETITIONER**

v.                                                                   **No. 3:23CV159-MPM-JMV**

**STATE OF MISSISSIPPI, ET AL.**                                                 **RESPONDENTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of James M. Gardner for a writ of *habeas corpus* under 28 U.S.C. § 2241. The State has moved to dismiss the petition for failure to exhaust state court remedies. The petitioner has not responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the State's motion will be granted, and the instant petition will be dismissed.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2241**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new habeas corpus procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about habeas corpus.

*Id*.

> Relief under § 2241 is available to a prisoner in five situations, when:
>
> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
>
> (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
>
> (5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(c).

Under 28 U.S.C. § 2241, a federal court may issue the writ when the petitioner is in state custody pursuant to something other than a state judgment (such as pretrial detention, pretrial bond order, etc.), permitting a federal court to order the discharge of any person held by a state in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915). Section 2241 also provides a remedy for federal prisoners in two instances, "(1) to challenge the execution of a sentence, and (2) to test the legality of a detention when § 2255 is otherwise inadequate." Section 2241, Federal Habeas Manual § 1:29.

**Procedural History**[1]

The procedural history of this case is lengthy and complex; though, as discussed below, the resolution of the case is straightforward.

**Guilty Plea and Sentences**.

In December 2018, James M. Gardner was indicted in Panola County Circuit Court Cause No. CR-2018-0148-JMP2 for felony fleeing (Count 1) and malicious mischief (Count 2) as a habitual offender under Mississippi Code Annotated section 99-19-83. Exhibit B[2]; *see also* State Court Record ("SCR"), CR-2018-0148-JMP2 at 3–4. In May 2019, Gardner pled guilty to felony fleeing and malicious mischief as a reduced "§ 99-19-81 habitual offender" in Panola County Circuit Court. SCR, CR-2018-0148-JMP2 at 18–41, 46–68. Thus, on May 15, 2019, the trial court sentenced Gardner as a habitual offender under Mississippi Code Annotated section 99-19-81 to serve five years in MDOC custody on Count 1 (felony fleeing) to run concurrently with any previously imposed sentence, with credit for time served in pretrial detention. *See* Exhibit C; *see also* SCR, CR-2018-0148-JMP2 at 8–9, 12–15. On Count 2 (malicious mischief), the trial court sentenced Gardner to a consecutive sentence of ten years with two years to serve in MDOC custody and eight years of post-release supervision ("PRS") (two years of reporting PRS and six years non-reporting). Exhibit C; *see also* SCR, CR-2018-0148-JMP2 at 8–9, 12–15, 42–45.

Gardner's state court records confirm that he was subsequently released from the physical custody of MDOC to begin his PRS on August 31, 2020. *See* SCR, CR-2018-0148-JMP2 at 70.

---

[1] The court has drawn the procedural history in this case from the State's motion to dismiss, as the history is both well-documented and uncontested.

[2] The exhibits referenced in this memorandum opinion may be found attached to the State's response to the instant petition for a writ of habeas corpus.

Then, on September 12, 2020, the Panola County Circuit Clerk's Office issued its first affidavit for Gardner's violation of the terms of his PRS, citing his failure to report to his probation officer following his release from MDOC physical custody. SCR, CR-2018-0148-JMP2 at 69–70. The Panola County Circuit Clerk's Office issued a second affidavit on December 15, 2021, citing Gardner's failure to report to the MDOC probation office for a four-month period. SCR, CR-2018-0148-JMP2 at 71–72, 74–75.

Three months later, on March 10, 2022, the State filed a "Petition to Revoke Post-Release Supervision." Exhibit D; *see also* SCR, CR-2018-0148-JMP2 at 76–78. Gardner had violated the terms of his PRS "[o]n or about September 1, 2021," when "[he] committed the crimes of Armed Robbery and Possession of a Firearm by a Convicted Felon." Exhibit D; *see also* SCR, CR-2018-0148-JMP2 at 76–78. The following day, on March 11, 2022, the trial court issued a bench warrant for Gardner. SCR, CR-2018-0148-JMP2 at 81. The trial court also appointed counsel to represent Gardner and set a revocation hearing. SCR, CR-2018-0148-JMP2 at 79–80. During the revocation hearing, the trial judge observed that, even though Gardner had been sentenced as a habitual offender, he was released from MDOC custody on August 31, 2020, after serving less than two years of his sentences for felony fleeing and malicious mischief. SCR, CR-2018-0148-JMP2 at 119–36.

At the revocation hearing (SCR, CR-2018-0148-JMP2 at 119–36), the State presented Gardner's new 2021 indictment for armed robbery and felon-in-possession of a firearm. Exhibit E; *see also* SCR, CR-2018-0148-JMP2 at 95, 121 (noting that "a group of people [] met, [] heard the evidence or the proof that [the State] put in front of them, and [] found by the preponderance of the evidence that the charge[s] did occur"). A Panola County Sheriff's Deputy also testified to support the armed robbery and felon-in-possession charges that served as the basis for Gardner's

revocation. *See* SCR, CR-2018-0148-JMP2 at 123–31.  Finally, the State submitted two exhibits at the revocation hearing: (1) the new indictment in Panola County Cause No. 2021-81SMP1, and (2) Gardner's prior indictments and sentencing orders as proof of his habitual status. SCR, CR-2018-0148-JMP2 at 86–118, 131–33.

The trial court determined that the State satisfied its burden of proof for the revocation. SCR, CR-2018-0148-JMP2 at 133.  Thus, on April 11, 2022, the trial court entered an order revoking Gardner's PRS and sentenced Gardner to serve his eight-year term as a habitual offender under Mississippi Code Annotated section 99-19-81—the remaining portion of Gardner's suspended sentence on the malicious mischief conviction—with credit for time in custody awaiting the hearing.  Exhibit F; *see also* SCR, CR-2018-0148-JMP2 at 84–85.

Because Gardner "[was] revoked for 8 years as a 99-19-81 habitual offender 2018-148 JMP2," the trial court entered a "Negotiated Order to Remand" Gardner's new armed robbery and felon-in-possession of a firearm charges as a § 99-19-83 habitual offender in Cause No. 2021-81-SMP1.  Exhibit G; *see also* SCR, CR-2021-81-SMP1 at 6–8.

**Federal *Habeas Corpus* Proceedings**

In early 2023, Gardner initiated federal *habeas corpus* proceedings through the filing of a § 2254 petition in the United States District Court for the Southern District of Mississippi on February 24, 2023.  *Gardner v. Panola County*, No. 3:23CV51-MPM-JMV, 2023 WL 3767061, at *3 (N.D. Miss. June 1, 2023).  "However, in early March 2023, that court transferred the case to this court" because "Gardner was challenging the revocation on his Panola County plea and sentence (and Panola County lies within this court's territorial jurisdiction)."  *Id.*

This court dismissed Gardner's February 2023 § 2254 petition for various reasons.  *Id.* at *1.  The court thoroughly detailed and addressed Gardner's "litany of bare allegations related to

his malicious mischief plea and sentence and the revocation of the suspended portion of his sentence on that conviction." *Id.* at *1. First, the court held that Gardner's challenges to his original 2018 plea and sentences for malicious mischief and felony fleeing were untimely filed under AEDPA and, alternatively, were procedurally defaulted. *Id.* at *1. The court thus dismissed Gardner's challenge to his original 2018 plea and sentences with prejudice. *Id.*

Second, the court held that "Gardner's challenges to the revocation of his [PRS] on the malicious mischief charge have not been exhausted with the state's highest court as required under AEDPA[.]" *Id.* at *1. Thus, the court held that Gardner's February 2023 § 2254 petition was subject to dismissal without prejudice on that basis. *Id.* at *1, *6. The court further held that "[i]n the alternative, his unexhausted revocation claims will be dismissed with prejudice for want of substantive merit." *Id.* at *1, *6–*7. Finally, the court dismissed Gardner's challenge to the conditions of his confinement without prejudice because that claim "[wa]s not cognizable through a petition for a writ of *habeas corpus*[.]" *Id.* at *1, *7.

Meanwhile, two-and-a-half weeks after Gardner filed his first § 2254 petition in the United States District Court for the Southern District of Mississippi on February 24, 2023, he filed a second petition in this court on March 14, 2023. Doc. 1. That second petition is currently pending in this court. Docs. 1, 4. As in his first petition, Gardner submitted his second petition on the § 2254 form and asserted a "litany of bare allegations" with partially incoherent words and phrases written in the margins, referencing both his malicious mischief plea and sentence and the subsequent revocation of the suspended portion of his sentence on that conviction. *See* Doc. 1. Gardner also referenced his armed robbery charge that was ultimately retired to the files. *See* Doc. 1. Gardner alleged, including but not limited to: that he received an unfair eight-year sentence (Doc. 1 at 5); that he filed "MDOC remedies" but got no response (Doc. 1 at 5); that he

filed pleadings with the circuit and Southern District of Mississippi Courts but received no response, so he filed a petition in this Court (Doc. 1 at 5); that he is unlawfully held in custody (Doc. 1 at 7); that he received ineffective assistance of counsel because counsel knew that Lowe's did not press any charges (Doc. 1 at 7); that his arresting case was retired to the files (Doc. 1-1 at 2); that his guilty plea was involuntary (Doc. 1-1 at 3); and that his sentence exceeds the maximum allowed by law (Doc. 1-1 at 3). Gardner also wrote "Motion for 2241 Petition" (Doc. 1-1 at 7) at the end of his form and questioned why he did not receive a ninety-day sentence to a technical violation center ("TVC") or less than eight years on his probation revocation (Doc. 1-1 at 8).

Then, on August 4, 2023, Gardner filed a handwritten pleading entitled "Petition Relief Habeas Corpus 2241," challenging his "Revoke [sic] of Probation" without justification and again submitting a litany of allegations. Doc. 4. Gardner asserts that "no new crimes [were] committed on [his] arrest date" and that his "case with MDOC is to correct [his] time sheet" because his "release date [should] be 8-31-2023." Doc. 4 at 1. Gardner maintains here, as he did in his first § 2254 rejected by the court, that he should have been sentenced on his revocation to ninety days in a TVC instead of an eight-year term of incarceration; that his eight-year sentence imposed on his revocation is "illegal" because it exceeds the five years allowed under state law; and that MDOC issued two bench warrants in violation of his right to protection from double jeopardy. Doc. 4 at 1. Gardner also alleges that his counsel was ineffective "because [counsel] erroneously informed [him] that Lowe[']s Store press[ed] property damages charges … and [counsel] knew 10 years in MDOC would be unlawful because Lowe[']s Store press[ed] not one charge against [him] on 8-31-2018." Doc. 4 at 2. Gardner further offers the following conclusory statements: a "6th Amendment Fast Speedy Trial Violation," a "Due Process of

Law" violation due to deprivation "of liberty and den[ial] of property," and a "14th Amendment Violation" "by law discriminations."  Doc. 4 at 2.  Finally, Gardner asserts that this "appeal is be[ing] made [] to restore [his] probation" and asks that the court "remember [that he is] doing 10 years in MDOC for a none pressied [sic] property damage case CR2018JMP2."  Doc. 4 at 2.

The court entered an Order construing Gardner's filings to consist of a petition for writ of *habeas corpus* under 28 U.S.C. § 2241, challenging the April 7, 2022, revocation of [his] parole in the Circuit Court of Panola County, Mississippi[.]"  Doc. 5.

**MDOC Grievance ("ARP") Proceedings**

Following the conclusion of briefing on Gardner's prior § 2254 petition in this Court, Gardner challenged his revocation in a grievance submitted through the MDOC Administrative Remedy Program ("ARP").  However, as explained below, Gardner's MDOC ARP records confirm that he failed to properly pursue relief on his claims through the ARP.

Gardner submitted a handwritten prison grievance on July 25, 2021, which was stamped as "received" by the MDOC Commissioner's Office on May 3, 2023, and was forwarded to the Director of the MDOC ARP.  Exhibit H at 2.  Liberally construed, in his handwritten grievance, Gardner challenged his revocation proceedings and alleged that the "guidelines were not followed" and "erro[rs were] made" because he should have only been sentenced to a ninety-day term at a TVC based on his failure to report.  Exhibit H at 2.  Gardner contended that he was arrested for a case that was remanded to the file, and instead of being released, he was "held for an illegal 2nd bench warrant."  Exhibit H at 2.  At the bottom left of his handwritten grievance, Gardner wrote: "Sen[si]tive Issues to MDOC."  Exhibit H at 2.

On May 19, 2023, the MDOC ARP Director issued a letter to Gardner responding to his handwritten grievance:

> Your "sensitive" issue request has been received in this office.
>
> Your sensitive issue request has been reviewed. In order for your complaint to be treated as sensitive, the Director of [the] Administrative Remedy Program must agree with you and accept it as a sensitive issue.
>
> I do not find that this matter meets the criteria for sensitive treatment; therefore, I am returning it to you for submission through the Administrative Remedy Program (ARP) as a non-sensitive ARP and is therefore denied as to the sensitive issue.
>
> You will have five (5) days after receipt of this response to submit your potential grievance through regular channels to ILAP staff. ILAP will log the request into OffenderTrak and then forward it to the ARP department at your housing facility for consideration.

Exhibit H at 1. MDOC SOP Number 20-08-01 on Grievance Procedures confirms that policy outlined by the MDOC ARP Director in his letter to Gardner. *See* Exhibit I. On "Sensitive Issues," MDOC SOP Number 20-08-01 provides:

> If the offender believes the complaint is sensitive and would be adversely affected if the complaint became known at the institution, he/she may file the complaint directly with the Mississippi Department of Corrections Director of [the] Administrative Remedy Program. The offender must explain in writing, his reason for not filing the complaint with the institution.
>
> If the MDOC ARP Director agrees that the complaint is sensitive, he/she will accept and respond to the complaint. If he/she does not agree that the complaint is sensitive, he/she will so advise the offender in writing. The offender will then have five days from the date the rejection memo is received to submit his request through regular channels (beginning with the First Step if his complaint is acceptable for processing in the Administrative Remedy Program.

Exhibit I at 6.

Gardner signed for receipt of the MDOC ARP Director's rejection letter on June 9, 2023. Exhibit J. MDOC ARP officials advised the undersigned that Gardner failed to submit any additional correspondence to the MDOC ARP, as of the filing of this Motion to Dismiss.

**State Post-Conviction Proceedings**

Following the conclusion of briefing on Gardner's prior § 2254 petition in this court, he also challenged his revocation through the filing of *pro se* pleadings in the Panola County Circuit Court. However, as explained below, Gardner's circuit court records confirm that the court has not disposed of either of Gardner's state court motions for post-conviction collateral relief ("PCR motions"), as of the filing of the instant Motion to Dismiss.

In March 2023, Gardner filed his first *pro se* PCR motion in the Panola County Circuit Court (with a signature date of April 12, 2022, but with supporting verification, motion to proceed *in forma pauperis*, and financial authorization all notarized on January 31, 2023). *See* SCR, Cause No. CV-2023-175-SMP2. The trial court entered an Order in Gardner's original criminal proceeding (Cause No. CR-2018-0148-JMP2), granting Gardner's request to proceed in forma pauperis on his PCR motion, directing the circuit court clerk to file Gardner's "sworn pleading … as a separate, original civil cause," and ordering that "[Gardner] shall file a separate motion to attack the validity of any other judgment/order in a separate cause, specifically, that Cause No. 2021-cr-00081 SMP1, mentioned in [Gardner]'s subject petition, in accordance with Miss. Code Ann. §§ 99-39-9(2), as amended." Exhibit K; *see also* SCR, Cause No. CR-2018-0148-JMP2 at 137.

On March 30, 2023, the circuit court clerk's office docketed Gardner's PCR motion in a separate civil action in Cause No. CV-2023-175-SMP2, as ordered. *See* SCR, CV-2023-175-SMP2. Liberally construed, Gardner raises the following grounds in his first PCR motion:

(1) The statute under which Gardner was convicted and sentenced is unconstitutional.

(2) Gardner's term of probation shall not exceed five years, so his sentence resulted in an Equal Protection violation.

(3) Gardner's eight-year sentence is illegal because it should not have exceeded ninety days in a TVC.

(4) Gardner's probation was unlawfully revoked.

(5) The trial court was without jurisdiction to impose Gardner's sentence because the Lowe's owner did not press charges.

(6) Gardner's guilty plea was involuntary.

SCR, CV-2023-175-SMP2 at 4. Gardner also asserts that "[t]he arresting case got RTF [(retired to the files) in Cause No.] 2021-81JMP, leaving [the] bench warrant for new crimes without justification." SCR, CV-2023-175-SMP2 at 3. On April 6, 2023, the trial court entered an Order reassigning Gardner's PCR motion to the trial judge who presided over Gardner's malicious mischief criminal proceedings in the Panola County Circuit Court. Exhibit L; *see also* SCR, CR-2023-175-SMP2 at 16.

On August 28, 2023, Gardner filed his second PCR motion in Cause No. 2023-175-SMP2. *See* SCR, Cause No. 2023-175-SMP2 at 17–36. Liberally construed, Gardner raises the following grounds in his second PCR motion:

(1) Improper indictment 5th Amendment.

(2) The trial court was without jurisdiction to impose Gardner's sentence.

(3) The statute under which the conviction and[/]or sentence was obtained is unconstitutional.

(4) The sentence exceeds the maximum authorized by law.

(5) Double Jeopardy violation.

(6) There exists material evidence not previously presented and heard that proves that Gardner's plea was involuntary and requires vacation of his sentences.

>    (7)     Gardner's probation was unlawfully revoked and resulted in a Due Process violation.
>
>    (8)     Speedy trial violation.
>
>    (9)     Violation of right to confront a witness.
>
>    (10)    Violation of right to assistance of counsel.

SCR, Cause No. 2023-175-SMP2 at 19.  As of the filing of the instant Motion to Dismiss, the Panola County Circuit Court has not entered any orders disposing of Gardner's first or second PCR motions.  *See* SCR, Cause No. 2023-175-SMP2, Docket.

Finally, on August 4, 2023, Gardner submitted a document entitled "Reduction of Sentencing" in his armed robbery and felon-in-possession of a firearm case in Cause No. CR-2021-81-SMP1, that is a duplicate of the second page of his document filed in this Court entitled "Petition Relief Habeas Corpus 2241."  *Compare* SCR, CR-2021-81-SMP1 at 9, *with* Doc. 4.  The Panola County Circuit Court Clerk's Office docketed Gardner's document as "Unfiled Inmate Mail." SCR, CR-2021-81-SMP1 at 2.  On August 10, 2023, the Panola County Circuit Court Clerk Office entered a note that the document was given to the trial court's staff attorney and that the clerk's office mailed Gardner a copy of his indictment, remand order, and discovery motion. SCR, CR-2021-81-SMP1 at 2.

### Gardner Did Not Exhaust State Remedies as to the Challenge to His PRS Revocation Before Proceeding Under 28 U.S.C. § 2241

There is no express statutory requirement that an inmate seeking *habeas corpus* relief under 28 U.S.C. § 2241 exhaust state court remedies prior to asserting his claims in federal court.  Federal courts have nonetheless read that requirement into the law.  *Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir.), *cert. denied*, 484 U.S. 956 (1987); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489-90, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Robinson v. Wade*, 686 F.2d at 303, n. 8

("Although section 2241 contains no statutory requirement of exhaustion like that found in section 2254(b), exhaustion of state remedies has been held a necessary prelude to its invocation.")

First, Gardner did not pursue his MDOC grievance regarding revocation of his Post-Release Supervision to completion. In addition, he still has the remedy of state post-conviction relief, which he is currently pursuing with two motions in the Panola County Circuit Court. Critically, the Mississippi Supreme Court's records, as available on the court's official website, confirm that Gardner has filed no pleadings in that court, as of the filing of the instant Motion to Dismiss. As such, Gardner has not properly presented his challenges to the revocation of his PRS to the Mississippi Supreme Court, depriving that court of a full opportunity to consider his claim before he seeks federal *habeas corpus* relief in this court. As such, the instant petition for a writ of *habeas corpus* must be dismissed for failure to exhaust state remedies.

### Alternatively, Gardner's Challenges to His Revocation Are Meritless and Will Be Denied With Prejudice.

Though Gardner did not exhaust his available state court remedies on his challenge to the revocation of his PRS, the court may still deny relief on the merits. *See Neville v. Dretke*, 423 F.3d 474, 480–82 (5th Cir. 2005) (holding that, although AEDPA requires total exhaustion as a prerequisite for relief, the court may deny relief on the petitioner's unexhausted claims); *see also Nobile v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998). Thus, the court may deny Gardner's challenges to his revocation with prejudice as meritless, even though he failed to exhaust his available state court remedies on that claim. *Neville*, 423 F.3d at 482; *see also, e.g., Keel v. Miss. Dep't of Corr.*, No. 3:21CV226-GHD-JMV, 2022 WL 1695780, at *6 (N.D. Miss. May 26, 2022) (dismissing petitioner's unexhausted and procedurally-

defaulted challenge to his pretrial jail credit in a proceeding under § 2241 "for want of substantive merit") (citing *Neville*, 423 F.3d at 480–82; *Nobile*, 127 F.3d at 423).

The record in this case, detailed above, reveals that Gardner is not entitled to relief on his challenges to the revocation of his PRS and execution of his eight-year sentence they are proper; he is serving his eight-year term of incarceration following his revocation for his commission of new felonies of armed robbery and felon in possession of a firearm. *See* Part II, *supra.*

In addition, this court previously rejected Gardner's challenges to his revocation as meritless. *See Gardner*, 2023 WL 3767061 at *1, *6–*7. The court addressed and rejected Gardner's specific claims that:

> (1) He should have been sentenced on the revocation to ninety days in a TVC instead of eight years in MDOC; (2) The "arresting case" that precipitated the State's petition to revoke his post-release supervision was passed to the files in April 2022; as such, he was improperly revoked; (3) His eight-year sentence imposed for the revocation is illegal because it exceeds the five years allowed under state law; and (4) Two bench warrants were issued in violation of his right to protection from double jeopardy.

*Id.* at *7. The court will revisit its earlier decision, showing that Gardner's current claims should likewise be rejected.

"First," this court held, "Gardner's claim that he should have been sentenced to ninety days in a TVC on the revocation is simply contrary to existing state law." *Id.* The court noted that "[a]lthough the initial affidavits for revocation were, indeed, for technical violations of his PRS, Gardner's PRS was not revoked for a technical violation." *Id.* "Instead," the record reveals that "it was revoked because he committed new felonies, and the 'guiding statute [for that type of revocation] is Mississippi Code Annotated section 47-7-37.1,' rather than the statute governing technical violations." *Id.* (citing *Amerson v. State*, 325 So. 2d 1225 (Miss. Ct. App. 2021) (new felonies—shown by a preponderance of the evidence—merit imposing the

suspended sentence, rather than a sentence of ninety days or less in a TVC)). "Hence," the court held, "the trial court's revocation and imposition of Gardner's eight-year suspended sentence was proper under state law[,]" and his challenge is meritless. *Gardner*, 2023 WL 3767061 at *7

Further, the court held that "Gardner's claim that his revocation is improper because the 'arresting case' was passed to the files is contradicted by both the record and state law." *Id.* As set forth above, "the charges in Gardner's new indictment for armed robbery and felon-in-possession of a firearm as a habitual offender under Miss. Code Ann. § 99-19-83 were remanded to the files in a 'Negotiated Order to Remand.'" *Id.*; *see also* Exhibit F; SCR, CR-2021-81-SMP1 at 4–6. Thus, "Gardner received the benefit of having those charges—two new crimes each charged as a habitual offender with a potential life sentence—passed to the files." *Gardner*, 2023 WL 3767061 *7. Thus, "[h]aving enjoyed that benefit, he may not now argue that his negotiated agreement to pass those charges to the file renders his current revocation invalid." *Id.*

"In any event," the court continued, "a conviction on the new charge is unnecessary for revocation; the State need only show that it was more likely than not that Gardner violated the terms of his probation." *Id.* (citing *Fairley v. State*, 138 So. 3d 280, 282 (Miss. Ct. App. 2014)). In this case, "[a]t Gardner's revocation hearing, the State presented the new indictment and the testimony of the arresting officer." *Gardner*, 2023 WL 3767061 at *7 (citing SCR, CR-2018-0148-JMP2 at 117–34; *Williams v. State*, 334 So. 3d 177, 181 (Miss. Ct. App. 2022) (discussing the State's burden in a revocation proceeding)). "Based on that evidence, the trial court held that the State had met its burden of proof for revocation." *Gardner*, 2023 WL 3767061 at *7.

"Third," the court rejected Gardner's contention "citing Miss. Code Ann. § 47-7-34," "that his eight-year sentence imposed for the revocation is illegal because it exceeds the five years allowed under the state statute governing supervised release." *Id*. The court noted that

"Gardner has misinterpreted state law on this issue." *Id.* The record reveals that "[h]e was originally sentenced to ten years for Count 2, malicious mischief, with two years' incarceration and eight years on PRS—two years of reporting PRS and six years of non-reporting." *Id.* (citing SCR, CR-2018-0148-JMP2 at 10–13, 40–43). The trial court revoked his PRS "in April 2022, less than a year after his release from MDOC custody." *Gardner*, 2023 WL 3767061 at *7 (citing SCR, CR-2018-0148-JMP2 at 82–83).

The court explained that, in Mississippi, only *supervised* probation is limited to five years:

> Section 47-7-34 of the Mississippi Code limits the length of time that MDOC may supervise inmates on PRS; however, the "clear language of the statute does not limit the *total number of years of* [*PRS*] to five years." *Williams*, 334 So. 3d at 184–85 (citation omitted) (emphasis added). Hence, "while supervised probation is limited to five years, [the total time for PRS] is not." *Id*. at 184 (citation omitted). In the present case, Gardner was originally sentenced to ten years—two to serve and eight on PRS; as such, the court's order did not exceed the maximum sentence authorized for malicious mischief. *See* Miss. Code Ann. § 97-17-67(4) (maximum of ten years). Gardner's claim arguing that he should not have been sentenced to more than five years at the time of his revocation is contrary to state law and is thus meritless.

*Gardner*, 2023 WL 3767061 at *8.

The court also rejected "Gardner['s] argu[ment] that two bench warrants were issued in violation of his right to protection from double jeopardy," which does not apply to revocation of parole or probation. *Id.* Mr. Gardner "did not identify which two warrants he believes led to a double jeopardy violation; however, his claim fails no matter which warrants the [C]ourt might consider, as all the warrants involved revocation." *Id.* The court held that Gardner's "claim is without substantive merit" because "[a] petition to revoke probation or to revoke suspension of a sentence is not a criminal case and not a trial on the merits of the case and therefore double jeopardy does not apply." *Id.* (citing *Williams*, 334 So. 3d at 184–85; *Osborne v. U.S. Dist.*

*Court, Southern Dist. of Miss.*, 132 F.3d 1456, 1997 WL 803105 (5th Cir. 1997) (unpublished) ("The Double Jeopardy Clause does not apply to parole revocation hearings.") (citing *Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 46-47 (5th Cir. 1991))).

The court concluded that "Gardner's claims challenging the revocation and imposition of his eight-year suspended sentence" lacked "substantive merit" and were dismissed with prejudice on that basis. *Gardner*, 2023 WL 3767061 at *8. Hence, whether the court construes Gardner's repeated challenges here as claims regarding the execution of his sentence – or regarding the imposition and validity of his sentence, the court will again deny those claims with prejudice as meritless. *See id.*

### An Allegation That MDOC Improperly Calculated Gardner's Release Date – or Violated His Right to Release on Parole or Probation – Fails to State a Valid Claim for Federal *Habeas Corpus* Relief

Finally, to the extent that Gardner argues that he has a right to release on parole or probation – or that MDOC has improperly calculated his release date – such challenges fail to state a valid *habeas corpus* claim for relief. *See* Doc. 4 at 1 (alleging that his "case with MDOC is to correct [his] time sheet and that "an appeal is be[ing] made [] to restore [his] probation"). A federal *habeas corpus* petition "based on any argument that state courts are incorrectly applying their own law … is not a basis for [federal *habeas corpus*] relief." *Wansley v. Miss. Dep't of Corr.*, 769 F.3d 309, 312 (5th Cir. 2014); *see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.") As such, Gardner's request for release on parole or probation – or assertion that MDOC miscalculated his release date – fails to state a claim upon which *habeas corpus* relief could be granted –and will be dismissed with prejudice.

**Conclusion**

In sum, Gardner's challenges to his PRS revocation and the execution of his eight-year sentence will be dismissed with prejudice as meritless, or, in the alternative, without prejudice for failure to exhaust available state court remedies. In addition, Gardner's request for release on parole or probation – and his challenge to the MDOC's calculation of his release date – will be dismissed with prejudice for failure to state a claim upon which *habeas corpus* relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 12th day of February, 2024.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI